THE PEOPLE v. JOHN HICKS.

*Liquor traffic—Local option law—Evidence—Treating.*

1.  In this case the respondent had been engaged in the sale of liquor for several years prior to May 1, 1888, when, by a vote of the electors of his county, the "local option" law was supposed to be operative, and he ostensibly discontinued his business, but kept his stock on hand awaiting the decision of the Supreme Court as to the validity of said law.   He took out a government license, and sold soft drinks and wild cherry bitters over his counter, behind which he kept a bottle of liquor, which was replenished from said stock, and also received cases of beer weekly, which liquor and beer he claimed were kept for his own use.   After the law was declared unconstitutional, and on May 19, 1888, he was advised that he had a right to go on with his business, and invited certain parties from the street to come in and "take something," to whom he gave cigars and "soft stuff," and liquor from the aforesaid bottle.   He was prosecuted for engaging in the liquor business on May 19, 1888, without paying the State tax, etc., and was convicted; and in affirming the conviction the Court hold:

    *a*—That while the people were confined to the day laid in the information as the date of respondent's carrying on the business in violation of law, yet they had the right to show that a few days prior to May 19, and after May 1, in answer to a wife who forbade his selling to her husband, respondent answered that he was selling him no more than other saloon men; also to show by the wife that her husband was a con-

stant visitor at respondent's place of business during the week preceding May 19, and was intoxicated almost every day, and at times brought home whisky in a bottle,—as tending to prove what respondent's place of business was used for, and its surroundings, as well as the manner in which respondent had conducted his business immediately preceding May 19.

*b*—Respondent having offered himself as a witness in his own behalf, and an acquittal being asked upon his testimony, it was proper for the prosecution, on his cross-examination, to show his methods of conducting his business.

*c*—It was also competent for a witness to testify that he saw barrels, bottles, etc., in respondent's place of business, as showing that he had all the means and facilities for carrying on the business on the day in question.

*d*—In his charge the court called the attention of the jury to the calling in and treating of said parties, and said "that a man has a right to treat his friends, if he does it for that purpose alone, and in good faith, and without intending to evade the laws; but he had no right to open his saloon, and treat different individuals, as a means of introducing the business he is about to engage in; neither for the purpose of advertising the business he is engaged in;"—which instruction is held to have been all that the respondent could ask for under the circumstances.

Exceptions before judgment from Gratiot.   (Hart, J.) Argued January 23 and 24, 1890.   Decided February 20, 1890.

Respondent was convicted of engaging in the business of selling liquor without having complied with the provisions of the law of 1887.   Conviction affirmed, and court advised to proceed to judgment.   The facts are stated in the opinion.

*W. A. Bahlke,* for respondent.

*S. V. R. Trowbridge,* Attorney General, and *B. H. Sawyer,* Prosecuting Attorney, for the people.

LONG, J. This case comes to this Court on exceptions before sentence.

The information under which the respondent was con-

victed charges that he was on May 19, 1888, unlawfully engaged in the business of selling and keeping for sale spirituous and intoxicating and malt, brewed, and fermented liquors at retail, without first having paid the tax required by law, and that he did not have the required notice posted, he not being then and there a druggist, etc. The information is filed under the provisions of Act No. 313, Laws of 1887.

It appears ·that the respondent had carried on the saloon business at Alma, Gratiot county, during the year ending May 1, 1888, selling and keeping for sale spirituous, intoxicating, malt, brewed, and .fermented liquors, and continued to carry on the same up to the first Monday in May, 1888, when the people of Gratiot county, having voted upon the question submitted to them under the provisions of Act No. 197, Laws of 1887, commonly called the "Local Option Law," by their votes declared such law should have effect in that county. On May 18, 1888, the opinion of this Court was rendered holding the local option law unconstitutional and void. *In re Hauck*, 70 Mich. 396. It is claimed by the people that the respondent, on the morning of May 19, 1888, having learned through the public press that the local option law had been held invalid, at once opened his place of business, and not only sold, but there kept for sale, spirituous liquors, without having first paid the required tax, and obtained and posted the county treasurer's certificate.

The respondent testified that he had been in the liquor business some eight or nine years, and carried on the business up to May 1, 1888, at which time he had quite a stock of liquors on hand; that after May 1, 1888, he quit selling liquors, and had them put in a room which he partitioned off, intending to sell again, if the law was declared void; that he was watching for the decision of

the Court, as he knew a case was then pending there, and when he read of the decision on May 19, 1888, he was advised by Mr. Willard that he had a right to go on with the business; that he thought he had the right to handle liquors, and, parties coming along, he said, "Boys, come in; lets go in and take something;" that they went in, and he got some cigars and soft stuff. He does not, however, deny having given the parties liquor who went in there on that occasion, and says that it was from a bottle which was in the back end of the store behind the counter.

Respondent further testifies that after May 1, 1888, he paid no tax, and did not have the county treasurer's receipt posted on May 19; that from May 1 he sold cigars and what he called soft drinks and wild cherry bitters, but no intoxicating liquors, and that the liquors which he furnished these parties on that day were not paid for; that he did not sell or keep for sale any intoxicating or malt liquors after the first Monday in May, and was not engaged in the business.. It appears, however, from his testimony, that he took out his government license about May 1 for the ensuing year; that he kept a bottle of whisky in the cupboard behind his bar, and when it was emptied he filled it again from liquors he had on hand in the room thus partitioned off; that he was also supplied weekly with cases of lager-beer, which were kept there in his saloon. The most of these liquors and the beer he claims to have drank himself, and that the remainder was taken to his own house.

The people called several witnesses who testified that in the afternoon of May 19, 1888, the respondent called them into his saloon, and furnished them whisky from a bottle, which they drank; that the respondent then said the law was "busted," and he was now selling the pure old stuff. Mr. Willard, one of the parties called in there,

testifies that he told the respondent that he was fooling himself,—that the liquor law was good,—when the respondent said he "knew better; that it was all busted and gone to the devil." The people also called Mary Hopkins as a witness, who testified that she lived across the street from the defendant's saloon, and kept a boarding house; that her husband, on May 19, had been in the respondent's saloon nearly all day; that she went in there between 6 and 7 o'clock in the evening of that day, and found her husband and son in there, her husband being at that time greatly intoxicated; that she saw upon the counter several whisky, and beer glasses, which the respondent took off and concealed behind the counter when she entered; that when her husband commenced going there in the morning he was sober.

Eighteen errors are assigned, five of which are directed to the ruling of the court in the admission of the testimony of the witness Mary Hopkins, who was permitted to testify that a few days prior to May 19 she had a talk with respondent about selling her husband intoxicating liquors, and had forbidden him to sell to him, and had also given him written notice, some months prior, not to sell or furnish him liquors, to which request, a few days prior to May 19, 1888, the respondent answered that he was selling him no more than other saloon men, and no more than he needed; that her husband was in the habit of getting intoxicated, and during the week previous to May 19 he was a constant visitor at defendant's place of business, and was intoxicated almost every day; and that he at times brought home whisky in a bottle.

The court was not in error in admitting this testimony. It tended to show that the respondent was unlawfully conducting the business on May 19. The situation of affairs from the respondent's own testimony was that he had for some seven or eight years carried on the business

of a retail dealer in liquors; that when he believed the
local option law had taken effect he ostensibly closed his
business as a retail dealer in spirituous liquors, but kept
the stock on hand, from which he replenished the bottle
kept behind the counter, over which he sold soft drinks
and wild cherry bitters, and that there were taken weekly
to his place cases of beer. While he claims that this
bottle and the cases of beer were kept for his own use,
yet it was a question for the jury to determine, from all
the circumstances, whether this was so, or whether liquors
were being sold by him the same after the year expired
as before, and as tending to show that he was carrying
on the business on May 19, when he claimed the right
to do so, because he thought the law had been declared
unconstitutional. It is true the prosecution was limited
to the day laid in the information, May 19, as the date
of his having carried on the business in violation of law;
yet the prosecution had a right to show these circum-
stances as tending to prove the fact as to what the place
was, and its surroundings, as well as the manner in which
defendant had conducted his business immediately preced-
ing that time.

If the testimony of the defendant is true, he believed
the act invalid; and it is quite evident that he had more
care for the gains of the business than a desire to live
within the spirit of the law. Mrs. Hopkins had occasion
to watch the manner in which defendant conducted his
business, and to mark the whereabouts and condition of
her husband during this time, and her testimony had a
strong tendency to show that, for some time before as
well as on May 19, he was getting liquors at defendant's
place which occasioned his intoxication. The sales by
defendant at any time after the first Monday in May
were as unlawful as those made on May 19, and the fact
that he made sales on such days, while not proof of a

substantive offense under the allegations in the information of the carrying on of business on that day, yet was competent, as tending to show sales on the day in question.

Error is also alleged upon the ruling of the court in permitting the prosecution to cross-examine the defendant upon the manner of conducting his business before and after May 19, and also in permitting the prosecution to argue to the jury such circumstances as evidence of his guilt. We find no error in this. The defendant had contradicted the testimony of the witnesses offered by the people, and taken the position on the trial that after May 1, while he had carried on the saloon business, he confined his sales to soft drinks and wild cherry bitters, except such liquors and beer, which were being carried to his place, which he drank himself. His story is quite a remarkable one, and open to grave suspicion as to its truth. He had offered himself as a witness, and it was upon his testimony that his counsel were asking an acquittal at the hands of the jury. The court permitted the prosecution very properly, on cross-examination, to go into his methods of conducting his business.

When the witness Willard was on the stand, he was permitted to state what the defendant had in his place of business; that he saw barrels and bottles in there. This is alleged as error. This evidence was competent, as showing that he had all the means and facilities for carrying on the business on the day in question.

Error is also assigned upon the refusal of the court to give defendant's requests to charge. Such as were proper were covered by the general charge, and those not so covered were properly refused.

The remaining assignments of error that need be noticed relate to the charge of the court as given. In this there is no error. The court confined the issue to

the day of the 19th of May, and to the question whether the defendant carried on the business on that day in violation of law; and in the concluding portion of his charge, calling the attention of the jury to the parties being called in and treated by the defendant, said:

"A man has a right to treat his friends, if he does it for that purpose alone, and in good faith, and without intending to evade the laws; but he had no right to open his saloon, and treat different individuals, as a means of introducing the business he is about to engage in; neither for the purpose of advertising the business he is engaged in."

This was certainly all that defendant could ask, under the circumstances. The information was not founded on the theory of unlawful selling and furnishing, but for being unlawfully engaged in the business. There certainly was some evidence that, as soon as the defendant learned that the local option law was held invalid, he opened his place of business for the sale of liquors, even if he had not prior to that time continued to carry it on after May 1, the same as before, and the circumstances surrounding the whole transaction, and the conduct of the defendant, tend strongly to support the proof.

The conviction must be affirmed, and the court below will be advised to proceed to judgment upon the verdict.

The other Justices concurred.