PEOPLE *v.* BULLOCK.

1. CRIMINAL LAW—INTOXICATING LIQUORS—EVIDENCE.

Testimony that respondent had a quantity of intoxicating liquors on hand during the period charged in the information, which stated the off nse to be that of keeping a place where intoxicating liquors were sold, between May 1 and May 19, 1911, in violation of the local-option law (2 Comp. Laws, § 5412 *et seq*, 2 How. Stat. [2d Ed.] § 5017), was competent; and the prosecution was further entitled to show that re-

spondent was engaged as a druggist in selling intoxicating liquors prior to May 1st.[1]

**2. SAME—INTENT—SIMILAR OFFENSES.**

It was, however, erroneous to receive evidence of the manner in which respondent had conducted the business before prohibition was adopted in the county and to receive proof of alleged offenses committed by him during the preceding sixteen months: and the court improperly charged the jury that such evidence might be considered to determine the character of the place that respondent ran during the subsequent period of time.

**3. EVIDENCE—SIMILAR OFFENSES—TRIAL.**

While it is competent to show previous offenses of the same kind as those of which a respondent is accused, in order to establish a particular intent, it is not permissible to show that respondent is, in general, a violator of the law, by proving other offenses under different circumstances.

Exceptions before sentence from Montcalm; Davis, J. Submitted November 15, 1912. (Docket No. 171.) Decided December 17, 1912.

Julian W. Bullock was convicted of violating the local-option law. Reversed.

*Charles B. Rarden*, Prosecuting Attorney, for the people.

*F. A. Miller* and *R. A. Hawley*, for respondent.

STONE, J. In this case the information charged the respondent with having kept, on the 1st day of May, 1911, and on divers other times and occasions between that time and the 19th day of May, 1911, in the county of Montcalm, in a certain building, a certain place where vinous, malt, brewed, spirituous, intoxicating, and mixed liquors as a beverage, a part of which were intoxicating, were

---

[1] As to the power to prohibit the keeping of intoxicating liquor, irrespective of any intention to sell it in violation of law, see note in 26 L. R. A. (N. S.) 394.

The question of the right of one to testify as to his intent is considered in notes in 23 L. R. A. (N. S.) 367 and 34 L. R. A. (N. S.) 323.

sold, and stored for sale, given away, and furnished; the said respondent not then and there being engaged in so keeping such a place as a druggist, etc.   The respondent having pleaded not guilty, the case came on for trial, and testimony was offered on the part of the people tending to show that after May 1, 1911, the manufacture and sale of intoxicating liquors had been prohibited in the county under the local-option law, so-called, and that the respondent filed a druggist's bond in the office of the county treasurer of Montcalm county on the 28th day of April, 1910, and did not file another druggist's bond until July 13, 1911; that during the time elapsing from the 1st day of May, 1911, until the 19th day of May, 1911, and, in fact, until July 13, 1911, he did not have any druggist's bond on file in the office of the county treasurer which was in force or had any validity.   Testimony was also offered tending to show that a search warrant was issued by a justice of the peace of said county on the 18th day of May, 1911, authorizing the search of the drug store of the respondent and the seizure of the beer, whisky, and alcohol that might be found there; that this warrant was served on the 19th day of May, 1911, and search made by the deputy sheriff.   Upon such search there were found six bottles of wine; one gallon bottle partly full of alcohol; one quart bottle partly full of brandy; a keg partly full of Holland gin; a keg partly full of grape brandy; one barrel partly full of alcohol; one barrel partly full of high-grade whisky, which liquor was brought to the county seat and delivered to the sheriff.

The only direct testimony given in the case that tended to show that liquor was sold at the place of respondent, during the time covered by the information was that given by the witness Frank Walker, who testified, in substance, that he was in the respondent's drug store on the 18th day of May, 1911, and that respondent served him with whisky behind the prescription counter on that day, once in the forenoon, and once in the afternoon; and upon another

occasion, the date of which he could not tell, but between the 1st day and the 18th day of May, 1911, and somewhere from one to two weeks after the 1st day of May, respondent furnished him a glass containing something that tasted like ordinary whisky, and which he judged was whisky. Cross-examination of this witness developed the fact that he had made many different and contradictory statements with reference to the sales above indicated. The respondent denied that he had sold or delivered any intoxicating liquor of any kind to the witness Frank Walker, or to any other person, between the 1st day of May and the 19th day of May, 1911. This constitutes substantially all of the testimony in the case in respect to any sales or deliveries of intoxicating liquors to any person at the store of the respondent after the 30th day of April, 1911.

While the testimony of the witness Frank Walker covers less than 50 pages, the printed record in the case consists of over 200 pages, made up very largely of the testimony of more than a dozen witnesses who were permitted, against the objection and exception of respondent's counsel, to testify to sales claimed to have been made by the respondent during the 16 months prior to May 1, 1911. Testimony was also permitted, against the objection and exception of respondent's counsel, showing the amount of liquors received by the respondent over the Pere Marquette Railroad from the 1st day of January, 1910, to and until the 1st day of May, 1911. The people were also permitted, notwithstanding the objection and exception of respondent's counsel, to read in evidence the record of sales of intoxicating liquors made by the respondent during the month of April, 1911. This record of sales covers over 15 pages of the printed record. The following question, objection, and answer fairly illustrate the questions raised by respondent's counsel. The witness Seth Gates, called by the people, having testified that he was the agent of the Pere Marquette Railroad, and, as such, had charge of the freight department, was asked:

" *Q.* Can you tell the jury what was received by Mr. Bullock through your office in the nature of shipments of intoxicating liquors during the year 1910 up to the 1st day of May 1911 ?

" *Mr. Hawley:* I object to it as incompetent and immaterial. This question relates to shipments prior to the 1st of May, 1911. If there were any shipments subsequent to May 1, 1911, I have no objection; but shipments prior to that date are surely immaterial in this case.

" *The Court*: Do you claim that would be competent ?

" *Mr. Rarden:* The people claim that this place was conducted for 16 months before the 1st day of May in a way contrary to the law then existing; running a saloon in place of a drug store. There were shipped to this country drug store 16 barrels of whisky, 4 barrels of alcohol, and 625 cases of beer, gin, wine, etc. We also claim that this place was conducted where men came in behind the prescription case and drank. This was a place of public resort of people who were in the habit of drinking intoxicating liquors, a resort of men who were notorious bootleggers. One man there once a week at least, and he carried out of that place great quantities of something, we cannot tell just what. The inference is reasonably drawn; he was carrying something out of there he couldn't get in his own county, or he wouldn't have come up here for it. We claim that we have a right to show this as bearing upon the intent, not as bearing upon the commission, of the crime, but as bearing upon the intent and character of the business. We have a right to go behind the date charged in the information under the rule of the 166 Mich. 654.

" *The Court:* You have asked to go back 16 months. In that case it was only 3 months. A reasonable time is what the courts hold. Would 16 months be a reasonable time ?

" *Mr. Hawley:* The objection I make goes not so much to the question of remoteness, although remoteness would cut some figure in the matter if the evidence was at all material. It appears that until May 1, 1911, the general license law prevailed in this county. Subsequent to and including May 1, 1911, the local-option law has been in force in this county. It appears that in 1910-11 Mr. Bullock gave a bond as a druggist, and as such he had a right to sell liquor within certain restricted limits. After the

178 MICH.—26.

1st day of May, 1911, it appears that he did not give a druggist's bond until in July, and hence had no right in that regard during the time covered by the information. My objection is that the alleged sales or deliveries claimed to have been made illegally prior to the 1st day of May, 1911, cannot be given in evidence in this case."

The objection was overruled by the court, and an exception was taken. Upon the question being again read to the witness, Mr. Hawley made the following objection:

"I object to it as immaterial and incompetent for the further reason that the limit is too remote from point of time."

Objection overruled and exception taken.

Similar objections were made to the testimony of the divers witnesses who were sworn on the part of the people to show sales of liquor made by the respondent, and drank upon his premises as a beverage, during the 16 months prior to May 1, 1911, and exceptions were duly taken to the rulings of the court.

The case was submitted to the jury under a lengthy charge, from which the following are liberal extracts:

"Under the undisputed evidence in this case, local option was in force in this county after May 1, 1911, and no one, not even a druggist, had any right to keep stored for sale, to sell, give away, or furnish any such liquors without giving bonds required by law, which bond would bind them to sell according to law; so that the defendant under the evidence in this case undisputed and according to his own testimony during the month of May, 1911, had no right to keep any liquors on hand for sale—that is at his store for sale. He had no right to sell, give away, or furnish for any purpose, as under the evidence he gave no bonds to entitle him to handle these liquors for sale, and the charge is for keeping for sale. I am not saying he had no right to have liquor on hand, but no right to keep it there for sale. The charge is keeping for sale and selling, giving away, and furnishing during this time. * * *

"Now while the prosecution, in order to convict, must satisfy you beyond a reasonable doubt that he kept this liquor stored for sale, or that he sold, gave away, or furnished to some one between May 1st and 19th, yet the

court has permitted proof to be taken of the manner of his conducting business back of that time to January 1, 1910, for the purpose of showing the character of his place during 1910 and so much of 1911 as reached down to May 1st, at a time when he had given bonds as a druggist to sell and keep for sale these kinds of liquors for medical, scientific, chemical, mechanical purposes, but yet illegal even in 1910 to sell, give away, or furnish for any other purpose except medical, scientific, mechanical, or chemical purposes, and was illegal during 1910 to allow liquors to be drank upon the premises or furnished to minors, persons of Indian descent, etc. So sales from January 1, 1910, to May 1, 1911, are allowed, and are to be considered by you for the purpose of aiding you to determine the character of the business of the respondent during that time. The respondent had a right during that time prior to May 1, 1911, to sell spirituous, intoxicating, vinous, and malt liquors for medical, sacramental, chemical and scientific purposes. It was his duty to sell such liquors only for such purposes, having no right whatever to be sold to be drank as a beverage upon the premises, under no circumstances to be drank upon the premises, and under no circumstances to be drank as a beverage.

"What I mean by 'beverage' is to be drank as distinguished from the term for medical use, whether for pleasure or for any other purpose outside of medical purposes so far as its being drank. It was his duty also, even during 1910, to record all sales made of such liquors, and no matter if a person called for it for medical, scientific, chemical, or mechanical purposes, the defendant had no right to sell it, if from circumstances surrounding the transaction he was not fully satisfied that the claim of the purchaser that he wanted it for medicine was true. In other words, the defendant had no right to sell, give, or furnish to a customer any of such liquors, even though the purchaser might have said he wanted it for medical purposes, unless he himself believed the statement to be true and that he acted in good faith. He had no right to sell to an habitual drunkard or minors even in 1910.

But though he sold or gave away liquors and allowed it to be drank upon the premises contrary to law during 1910 and up to May 1, 1911, and though he may have violated the law of 1910, yet in this case, if you are not able to come to a conclusion from the evidence that he kept such a place from May 1 to May 19, 1911, when

he had no right to sell at all, nor to keep such liquors stored for sale, then he should not be convicted. The conviction must be for keeping a place from May 1, 1911, to May 19, 1911. This evidence as to his manner of doing business in 1910, as I have already said, is for the purpose of aiding you to come to your conclusion of the character of the place which was kept by the defendant at that time, and then you are to say whether the character of the place has continued. Then you ask and answer this question, that decides this case: Did he keep this place from May 1, to May 19, 1911, where such liquors were stored for sale or where they were sold, given away, or furnished to others?

"Are you satisfied beyond a reasonable doubt that he sold or furnished such liquors to be drank on the premises during 1910 and up to May 1, 1911? Did he during this time sell to persons in the habit of getting intoxicated? Did he sell to persons for other purposes than those permitted by law during that period of time? If you are so satisfied beyond a reasonable doubt, then you pass to the question as to whether he was following the same kind of business during the time from May 1 to May 19, 1911."

The respondent was convicted by the jury, and the case is brought here by respondent to be reviewed on exceptions before sentence.

While there are many assignments of error, the controlling question in the case is whether the court erred in permitting witnesses to testify in detail and at great length as to the manner in which the respondent's business was conducted during the 16 months prior to May 1, 1911. We have no doubt that the people were entitled to show that the respondent had been engaged, at his place of business, in the liquor traffic prior to May 1, 1911. It was proper to show that the respondent had in his possession, on May 1, 1911, a quantity of liquors; for certainly he could not sell and give away or furnish, or have liquors stored for sale, unless he had the liquors actually on hand.

The more difficult question to be determined is whether the court erred in the latitude given to the evidence which we have above referred to, and to the manner in which

the evidence was treated in the charge of the court.    The testimony should in all cases be limited in its use to the purpose for which it was admissible.

We are impressed with the claim of respondent's counsel that undue emphasis was placed by the court in its charge upon the manner in which the business had been conducted during 1910 and the first four months of 1911. The jury were told that they might consider this evidence for the purpose of aiding them to come to a conclusion as to the character of the place which was kept by the respondent *during those months.*    They were asked whether they were satisfied beyond a reasonable doubt that respondent sold or furnished such liquors to be drank on the premises during 1910 and up to May 1, 1911.

"Did he during this time sell to persons in the habit of getting intoxicated ?   Did he sell to persons for other purposes than those permitted by law during that period of time ?   If you are so satisfied beyond a reasonable doubt, then you pass to the question as to whether he was following the same kind of business during the time from May 1 to May 19, 1911."

It seems to us that undue stress was here laid upon the conduct of the respondent prior to May 1, 1911, and that the question of whether he had sold liquors within the time named in the information was made subordinate to the other question.

Counsel for the people claim that they had a right to show the manner in which the business had been conducted by the respondent during the 16 months in question as bearing upon the question of his intent; and they argue that to keep liquors stored for sale is to keep liquors stored with intent to sell the same.    This is true, but it seems to us that the intent with which this would be done after May 1st is a very different intent from that of a druggist who has given a proper bond and has a right to sell liquors for certain restricted purposes, who violates a law and sells liquors to be drank as a beverage upon the premises. In the one case, he has no right to sell at all; while, in

the other case, he has a right to sell for certain purposes under certain restrictions. Is there not significance in the fact that on May 1, 1911, the whole system as to the dealing in intoxicating liquors was changed in the county of Montcalm? After that date, and during the time named in the information, the respondent had no right to sell at all, or to keep liquors stored for sale. This cannot be said of the previous period.

We have examined our own cases with some care, and refer first to the case cited upon the trial, that of *People* v. *Hancock*, 166 Mich. 654 (132 N. W. 443). In that case an examination of the record will show that the evidence of prior sales which was permitted to be shown was confined to the few months preceding September 24, 1910, during which time the local-option law had been in force in Allegan county.

In *People* v. *Giddings*, 159 Mich. 523 (124 N. W. 546, 18 Am. & Eng. Ann. Cas. 844), it was held that where respondent was charged with furnishing intoxicating liquors to one of a number of berry pickers, in violation of the local-option law, evidence of similar offenses relating to other berry pickers, at about the same time, was competent to show intent, and to rebut any inference of mistake or accident. In that case Justice McALVAY said:

"This case comes within the exception to the general rule relied upon by respondent that proof of other offenses may not be admitted upon the trial of one accused of crime, being of that class of cases where the circumstances permitted the inference of accident, mistake, or inadvertence to be drawn."

Citing cases, and then adding:

"If this proof was admissible for any purpose, it would not be rendered incompetent because it might tend to show other violations of the local-option law by respondent. Such proof is never admissible as substantive proof of the act charged for which a respondent is being tried."

The case of *People* v. *Hicks*, 79 Mich. 457 (44 N. W.

931), arose in a county where the prior local-option law
was in force, which law was declared unconstitutional.
In that case the information charged the violation to have
been on May 19, 1888.  Error was assigned upon the rul-
ing of the court in the admission of testimony of a witness
who was permitted to testify that a few days prior to May
19th she had a talk with respondent about selling her hus-
band intoxicating liquors, and had forbidden him to sell
to him, and had also given him written notice some
months prior not to furnish him liquors, to which request,
a few days prior to May 19, 1888, the respondent answered
that he was selling him no more than other saloon men
and no more than he needed.  She further testified that
her husband was in the habit of getting intoxicated, and
during the week previous to May 19th he was a constant
visitor to defendant's place of business, and was intoxi-
cated almost every day, and sometimes brought liquor
home in a bottle.  This court held that the circuit court
was not in error in admitting this testimony, and there
said:

"The sales by defendant at any time after the first
Monday in May were as unlawful as those made on May
19th, and the fact that he made sales on such days, while
not proof of a substantive offense under the allegations in
the information of the carrying on of business on that
day, yet was competent, as tending to show *sales on the
day in question.*"

Our attention has also been called to the case of *People
v. Caldwell*, 107 Mich. 374 (65 N. W. 213).  This was
another prosecution arising in the local-option county of
Hillsdale.  The information charged the keeping of a
place where intoxicating liquors were sold as a beverage
on December 25, 1893.  The court permitted the prosecu-
tion to show several sales of liquors prior to that time ex-
tending over two or three months.  This was assigned as
error.  It will be noted that this evidence related to a
time when the local-option law was in force, because we
take notice of the time when the act would take effect,

which would not be later than May, 1893. The court in the charge to the jury said:

"There has been evidence introduced here of other transactions which took place in this place of business on other days than this 25th day of December. They are before you for the purpose of aiding you in coming to your conclusion as to the character of the place which was kept by Mr. Caldwell on this 25th day of December, and not for any other purpose. In other words, even though you might find that during fair week, for instance, he had kept a place where intoxicating liquors were kept for sale or sold in violation of law, and were not able to come to the conclusion from the evidence that he kept such a place on the 25th day of December, then he should not be convicted here. The conviction here must be for keeping a place on this 25th day of December. This is simply for the purpose of aiding you in coming to your conclusion of the character of the place which was kept by this defendant."

It should be borne in mind that in the instant case the respondent is charged with keeping a place where intoxicating liquors were kept, stored for sale, given away, and furnished. The keeping of such a place was an offense after May 1, 1911, but it was no offense prior to May 1, 1911. Accordingly, the conditions were radically changed. Before May 1, 1911, he had the right to keep a place for the sale of liquors for medicinal, mechanical, chemical, scientific, and sacramental purposes. After that date he had no right to keep a place for the furnishing or sale of such liquors for any purpose. Prior to May 1, 1911, he did make sales and deliveries of liquor The character of such sales, whether legal or illegal, is in dispute. Evidence of such sales and deliveries was, by the permission of the court, permitted to be brought into this case against the respondent for the purpose of establishing his guilt upon a charge arising after May 1, 1911, at which time he had no right to make a sale or delivery for any purpose. The question of intent, or at least similar intent, was not here involved.

A search for authorities directly in point upon this subject has not been very fruitful. We find the following statement of the rule in 7 Enc. of Ev., at pages 754, 755:

"Evidence of the commission by the defendant of the same offense under similar circumstances is admissible to show motive and intent, and the defendant's system, habit, and course of business. Such acts only may be proven for this purpose, as were done subsequently to the taking effect of the law upon which the particular prosecution is based. It has been held that testimony of other sales is admissible only when the act constituting the offense is equivocal or committed under peculiar circumstances."

The following cases are cited by the author in a note bearing the heading:

"In prosecution for violating local-option law, evidence of other sales made before the prohibitory law came into effect is not admissible on the question of intent. *Efird* v. *State,* 44 Tex. Cr. R. 447 (71 S. W. 957); *State* v. *Dunning,* 14 S. D. 316 (85 N. W. 589)."

In *Efird* v. *State, supra,* which arose under a local-option law, the court of criminal appeals of Texas said:

"It has also been held that it is proper to show sales and delivery of whisky to other parties as evidence tending to show system of doing business"—citing authorities. "However, in view of the fact that this case must be reversed, we would suggest that, if this testimony relates to the period when local-option was not in force, then it would not be admissible. But it is germane and proper to prove sales to other parties, as stated above, as a circumstance going to establish a system under which appellant was violating the law."

In *State* v. *Dunning, supra,* it was held that in a prosecution for selling intoxicating liquors as a beverage without a license, under the law of 1897, which took effect March 3, 1897, it was error to permit evidence of sales made which was not limited to sales made between the time when the statute took effect and when the indictment was presented.

As to the admissibility of evidence of other offenses to show the habit, course of business, and system of respondent, we have pointed out that it should be confined to the commission of the same offenses under similar circumstances. Such acts only may be shown for this purpose as were done subsequent to the taking effect of the law upon which the particular prosecution is based.

The reason why other offenses under different circumstances may not be shown is because it is not competent to show that a respondent is a violator of law generally. When it is necessary to show a particular intent in order to establish the offense charged, proof of previous acts of the *same kind* is admissible for the purpose of proving guilty knowledge or intent. *People* v. *Wakely*, 62 Mich. 297–303 (28 N. W. 871).

This subject is discussed and the cases relating thereto cited by Justice OSTRANDER in *People* v. *Burke*, 157 Mich. 108–112 (121 N. W. 282).

We are of opinion that the trial court erred in the admission of the testimony, and in the charge in the instances pointed out; that the respondent was prejudiced thereby; and that for such errors the case should be reversed. *People* v. *Hickman*, 164 Mich. 672 (130 N. W. 331).

We have examined the other assignments of error. They mostly hinge upon the rulings in the reception of testimony of witnesses as to the prior sales, and the questions are not likely to arise on another trial, in view of what we have said. We find no error in the rulings relating to the testimony of the witness Frank Walker as to the claimed sales after May 1, 1911.

The conviction of respondent is set aside, the case reversed, and a new trial granted.

MOORE, C. J., and STEERE, McALVAY, BROOKE, OSTRANDER, and BIRD, JJ., concurred. KUHN, J., did not sit.