PEOPLE v. BURKE.

1. CRIMINAL LAW—CHANGE OF VENUE—DISCRETION.
   The denial by the trial court of a motion for change of venue will not be reversed on error where the showing of local prejudice consisted of articles in a local newspaper connecting the respondents with the attempted robbery of a bank, and it does not appear that any difficulty was experienced in drawing an impartial jury.

2. FORMER CONVICTION—EVIDENCE—PAROL TESTIMONY—INTENT.
   Parol proof of a prior conviction is inadmissible.

3. SAME.
   Evidence of a prior conviction of respondents who do not testify is only relevant when the act is, in itself, innocent, or where accident, mistake, or inadvertence might be inferred.

4. CRIMINAL LAW—REASONABLE DOUBT.
    An instruction to the jury that a reasonable doubt must be an
    insurmountable doubt is not approved. .

Error to Mecosta; Palmer, J, Submitted April 29,
1909. (Docket No. 117.) Decided May 26, 1909.

James Burke and Charles Thompson were convicted of
destroying a bank safe with intent to commit the crime of
larceny, and sentenced to imprisonment for not less than
15 nor more than 30 years in the State prison at Jackson.
Reversed.

*Cogger & Broomfield*, for appellants.

*Joseph Barton*, Prosecuting Attorney, for the people.

OSTRANDER, J. Respondents were jointly informed
against for a violation of 3 Comp. Laws, § 11506, entitled
"An act relating to the punishment of bank, safe and
vault robbery," and reading:

"That whoever, with the intent to commit the crime
of larceny, or any felony, * * * shall attempt to
break, burn, blow up, or otherwise injure or destroy any
safe, vault, or other depository of money, * * *
shall, whether he succeeds or fails in the perpetration of
such larceny or felony, be punished by imprisonment in
the State prison for life or any term of years."

They were convicted and sentenced to hard labor at the
prison at Jackson for not less than 15, and not more than 30
years. The alleged offense was committed in the village
of Mecosta, in the county of Mecosta, on April 28, 1908.
To the information respondents pleaded not guilty and
afterwards moved the court to change the venue of the
cause to some other county for the reason that because
of local prejudice respondents could not have a fair and
impartial trial in the county of Mecosta. The showing
which accompanied the motion consists of excerpts from
newspapers circulated in the county of Mecosta relating
to the occurrence and also purporting to give in detail a

history of the capture of the respondents, and a picture published in one of the dailies of a wrecked building and safe in connection with pictures of the respondents. The motion was overruled, and this ruling is the ground for the first assignment of error. We find nothing in the showing which was made sustaining the contention that the circuit judge abused his discretion in refusing to order the change of venue. It does not appear that any difficulty was experienced in securing an impartial jury. Indeed, the record does not disclose that the defense used any peremptory challenges.

The testimony offered on the part of the people (none was introduced for respondents) tended to prove that a private bank in the village of Mecosta was closed as usual about 5 o'clock on the 27th day of April, 1908. The bank building was detached, was furnished with ordinary counters and desks, and had a private office in the rear. In one corner was a vault of brick construction, with iron doors, and inside of the vault a so-called "burglar-proof safe," which locked with a combination and time lock, and the time lock locked also the outside door of the vault. The cash of the bank, about $2,300 in amount, with securities, was before closing the bank placed in the safe. Two or three cigar boxes, partly filled with pennies and some silver, were inside the vault but outside the safe. At some time between 2 and 3 o'clock on the morning of April 28th, a noise as of an explosion was heard, and it was discovered that the vault had been opened, apparently by an explosive, the door lay on the floor, the office and furniture were badly wrecked, the door to the safe was partly blown off, and the front windows of the building were blown out on the sidewalk. The only things of value which appear to have been taken were some of the pennies and pieces of silver which have been referred to.

The only point not covered by direct and undisputed testimony was the one of the identity of the respondents and the persons who destroyed the vault. The people

called as a witness Thomas E. Martin, who gave testimony tending to prove: That he was a deputy United States marshal, had been for several years, and was in 1904, with headquarters in Indianapolis, Ind.; that he came to know one Sam Jackson at Indianapolis in the year 1904, and he identified the respondent Burke as the man whom. he had known as Sam Jackson; that said Jackson was delivered over at Indianapolis with four other defendants by the United States marshal from Toledo, Ohio, on the 27th of May, 1904; that he had some business with him, which consisted of bringing him up from the jail to the courtroom during his trial; that he with others was tried for the alleged offense of blowing open the safe in the post office at Orleans, Orange county, Ind.; that the respondent Burke was convicted and sentenced to serve three years in prison at Ft. Leavenworth, and was delivered to the United States penitentiary at Ft. Leavenworth, Kan., on the 14th day of July, 1904. This testimony was received over repeated objections interposed by counsel for the respondents. Exceptions were duly taken to the rulings of the court. In his opening argument to the jury, the prosecuting attorney said:

"And if his name ever was Sam Jackson, he ought to stick to it. Now let us see whether it was Sam Jackson. In 1904 his name was Sam Jackson, according to the records in the United States court down here in Indianapolis, Ind. How do we know—

"*Mr. Cogger:* (interrupting): I object to that. Take an exception to the remarks of the prosecuting attorney as to what the records of the United States court at Indianapolis show.

"*Mr. Barton:* It is in evidence in this case.

"*The Court:* You may refer to the testimony of the man who testified on that subject.

"*Mr. Cogger:* An exception to the ruling of the court.

"*Mr. Barton:* (continuing): How do we know that? The deputy United States marshal, Thomas E. Martin, went on the stand, and his statements are undisputed that Sam Jackson, or James Burke under the name of Sam Jackson, in 1904 was tried in the United States court, of

Indianapolis, Ind., on the charge of having burglarized the safe in the post office in the village of Orleans, Orange county, Ind."

There was more to the same effect, with various objections, rulings, and exceptions.

The testimony of this witness with respect to the accusation, trial, conviction, and sentence of the respondent Burke, was admitted upon the theory that, because the statute offense involves a criminal intent on the part of the accused, it was proper, for the purpose of showing the intent with which this respondent had destroyed the vault at Mecosta, to prove that he had been convicted, in the year 1904, upon a charge that he blew open a safe in a post office in Indiana. The jury were instructed that:

"It was proper, as bearing on the intent of one of these respondents, if the crime was shown to have been committed by him, either by positive or circumstantial evidence, to show that he had committed a crime previously of a like or similar character, as bearing on the intent."

They were not otherwise instructed that the testimony could not be employed to affect the guilt or innocence of the respondent Thompson. The witness did not claim to have read the record, which presumably was made and is in existence, or to be testifying to the contents of the record. He did not claim that any particular intent of respondent was charged or was proved. It was, further, an attempt to prove by parol a former conviction of one of the respondents, a practice in support of which no authority is cited. It was, also, an attempt to prove a distinct and remote crime, in no way related to the one for which respondents were being tried. If the record of the former conviction had been produced, it should not have been admitted in evidence. In numerous cases this court has had occasion to state and apply what is sometimes said to be an exception to the general rule that proof of the commission of other crimes may not be given upon the trial of one accused of crime. They are for the most

part cases where the act of the accused was, in itself, innocent, involving no necessary implication of crime, or cases where the circumstances permitted the inference of accident, mistake, or inadvertence to be drawn.   Many of the cases are collected in the opinions in *People* v. *Seaman*, 107 Mich. 348 (65 N. W. 203, 61 Am. St. Rep. 326) (compare *People* v. *Lonsdale*, 122 Mich. 388 [81 N. W. 277]); *People* v. *Hoffmann*, 142 Mich. 531 (105 N. W. 838).   See *People* v. *Peck*, 139 Mich. 680 (103 N. W. 178); *People* v. *Henry*, 129 Mich. 100 (88 N. W. 77).   It is true the jury were required to find that the bank was destroyed with the intent to commit the crime of larceny, or some felony.   The circumstances as they were made to appear supported no inference of accident, mistake, or inadvertence.   There was no riot and nothing tending to prove that personal enmity provoked the destruction of property. That the admission of this testimony was calculated to influence the jury unfavorably to respondent Burke, there can be no doubt.   The respondent Thompson was, when captured, in his company, and it is the theory of the prosecution that respondents were acting in concert.   It cannot be imagined that, if they were acting in concert, they had different purposes or motives.   We are obliged to say that for the errors pointed out the conviction of both respondents must be set aside.

In view of the fact that a new trial must be had, it is proper to notice another assignment of error.   The court instructed the jury upon the subject of a reasonable doubt as follows:

"It is a rule of law, also, that the side whereon the burden of proof rests has the *onus* cast upon them of proving beyond a reasonable doubt the truth of their assertion; that is, the guilt of the respondents.   When I say 'reasonable doubt,' I mean a doubt based on reason, that a reason can be given for, as distinguished from other doubts.   Doubts may be imaginary doubts, may be captious, but reasonable doubts, if they exist, that are to be taken into consideration by this jury, are such substantial

doubts as grow out of the evidence in the case, or is such by reason of a lack of evidence in the case so that the jury not only hesitates but halts in its deliberation, meeting that obstruction. That obstruction is of an insurmountable character; that is, the jury cannot proceed on their way and come to a conclusion, if their way is barred by that obstruction known in the law as a reasonable doubt. Other doubts, which, as I said, may be imaginary or captious doubts, may not arise to the dignity of a reasonable doubt and may be removed from your minds by discussion among yourselves. Such doubts would not weigh with you. It is only the doubt known as a reasonable doubt based upon reason, which I have explained to you, that could constitute such an obstruction as would prevent the jury from going beyond that. When such a doubt exists, if it does exist, the benefit of that doubt should be given to the person or persons on trial for any criminal offense, and an acquittal would follow—must follow. Now, that is what is meant, and all that is meant, by a reasonable doubt."

It was said by Mr. Justice Champlin in *People* v. *Stubenvoll*, 62 Mich. 329, 334 (28 N. W. 883, 885):

"All persons who possess the qualifications of jurors know that a 'doubt' is a fluctuation or uncertainty of mind arising from defect of knowledge or of evidence, and that a doubt of the guilt of the accused, honestly entertained is a 'reasonable doubt.'"

This court, in *People* v. *Finley*, 38 Mich. 482, 483, approved and commended the following charge:

"A reasonable doubt is a fair doubt growing out of the testimony in the case. It is not a mere imaginary, captious, or possible doubt, but a fair doubt based upon reason and common sense. It is such a doubt as may leave your minds, after a careful examination of all the evidence in the case, in that condition that you cannot say you have an abiding conviction to a moral certainty of the truth of the charge here made against the respondent."

See, also, *McGuire* v. *People*, 44 Mich. 286 (6 N. W. 669, 38 Am. Rep. 265); *Hamilton* v. *People*, 29 Mich. 194. . The proposition that a reasonable doubt must be an insurmountable doubt is not approved.

It is unlikely that upon another trial other questions presented by the record will arise.

The conviction is set aside, and a new trial ordered. The respondents will be delivered to the custody of the sheriff of the county of Mecosta to be dealt with according to law.

MONTGOMERY, HOOKER, MOORE, and BROOKE, JJ., concurred.